Mr. Whitaker, please proceed. Good morning, Your Honors. The issues before the Court on this appeal is essentially the validity of the Malico patent. By way of background, Malico is a company that makes heat sinks. A heat sink is a device, a very simple device, that attaches to an electronic component. Those radiate heat. Why don't we just jump to the heart of the argument? As I understand your argument, it is that the District Court erred in a number of ways, one of which would include failing to look itself at the prior art references because he concluded that they weren't evidence. Is that your position? No, the Court below did not cite those as not evidence. That was the argument that was made by the defendants, Coolermaster and LSI at least. The Court relied on those references, interpreted them, and we believe that made some pretty substantial errors. The argument was we didn't advance. We, Malico, provided no evidence, but the evidence is, of course, the prior art references. I guess I thought that you just said the Court relied on them and interpreted the references themselves. I guess I'm misunderstanding. I thought part of your argument on appeal was that they basically, the District Court, just sort of adopted the expert testimony provided because he concluded you provided no evidence to the contrary, and I thought that part of your argument was he failed to look into the references himself to determine whether that expert testimony was valid. I believe that's substantially correct. The District Court, our words would have been simply adopted the expert report. The decision of the District Court spoke to the references in several respects. It filled in the missing components with expert testimony of the appellees. How come you don't have an expert report? We did not hire our own expert to be candid because we simply didn't believe one was necessary. The references, once you look at the invalidity contentions that had been served, were so to us to merit expert testimony. But at this point, it's too late for you to introduce any expert, right? Assuming we were to send this case back, it would be too late for you. Certainly, Your Honor, and to be candid, we don't believe one is necessary because the references speak for themselves. The heat sink at issue here is, it has no moving parts. It's literally a piece of plastic that you turn side to side. A child could understand. You're making it sound like your invention is pretty simple and easy. The wheel was simple and easy, but it took humans 30,000 years to come up with it. Simplicity alone doesn't render a patent either obvious or anticipated, certainly not anticipated. There needs to be some creative genius, and I believe that the simplicity is, in fact, the creative genius in this invention. The District Court, everyone has concluded that the gist of the invention, that's a term that was used during the prosecution history, adopted pretty much by the examiner during the prosecution, the gist is that those two pieces, piece of plastic and piece of metal, one rotates with respect to the other one, and that is what enables this change in height to accommodate two. The notion that you can take something so simple and with a very simple movement, change its height, is, in fact, that spark of genius that is nowhere at all ever suggested. It is... What is your argument, then, that to the extent that Dr. Carman said that all of the elements were present in Smithers, that that's simply false, that the judge should have looked at Smithers and seen there's no evidence of rotation? Yes, Your Honor. That is the essence. The Smithers reference was admittedly not before the patent office, and it was relied on, not exclusively, but largely exclusively by Dr. Carman in his invalidity analysis. And that's okay, the expert has his opinion, but it's such a simple concept that one need not be an expert to look at, well, two things, one need not be an expert to look at a piece of plastic and determine, well, does this look like that, or does this rotate with respect to the other? The more technical of the argument, the legal argument, is that Dr. Carman relied solely on patent drawings, which by his admission in a simple review of the reference simply speak not at all to whether it can be rotated. His conclusion from looking at the drawings was... Well, no, no, is it whether, is the test whether it can be rotated? Because I don't think that would be a good test for you. I think, wouldn't the test be whether or not it teaches rotation? Whether it teaches rotation... Or whether one would be motivated to rotate it. I believe, I think the law for obviousness, at least, would encompass that, and the question then is, is there any motivation to rotate it? One would almost certainly have to conclude no by looking at it, the reference itself speaks not of rotation, it in fact speaks quite the opposite. It talks about mounting a heat sink to a component and attaching it thusly, however it's attached. It says nothing at all about any rotation. So the notion of rotation is not taught by the reference, it's not discussed. Certainly, while explicit teachings is no longer required, there's nothing even remotely related to the notion of rotating to accomplish any different... And is it your view that the district court relied on Dr. Carman's assertion that the reference itself taught rotation? Is that the way you understand what happened? Yes, Your Honor, two things. If we conclude the reference doesn't clearly teach rotation or teach it at all, then this has to go back, but of course then Dr. Carman, I would think, or the court could look differently and say, well, the reference may not disclose rotation, but one of skill in the art would understand or be motivated to modify Smithers to rotate. That would be our second position, is that you can't rely on the drawings of a patent for that specific element. To suggest that if it does, one would have to conclude that the drawings themselves are sufficient to... There's nothing texturally. By looking at the drawings, we can envision that maybe one can rotate this element and it will still fit. That gets rotation. It does not get to altering the height, but that's taught nowhere. Your argument isn't that the drawings can't be used to supply the missing element. Your argument is that these drawings don't supply the missing element, right? You're not saying drawings are out. No, Your Honor. You're correct. We are saying that the drawings and the patent do not support the conclusion, cannot be relied on for the conclusion that a rotation is taught, not unless there's something in there. Like there's a little curved arrow that sort of indicated, feel free to turn this. Anything, Your Honor. Anything at all. When it comes to dealing with height differentials of CPU assemblies, it was known in the art to use a pad in order to make sure you make contact with the top surface of the dissipator? It was known in the art to use a separate component in addition to the heat sink. That was the Marwell. There were two references they dealt with. One was before the examiner, so the examiner had the notion of a component that can be altered slightly to adjust the import, adjust the invention to be rotated, because that was the distinguishing characteristic. An additional reference was included, but it was a reference that was the Marwell reference, which basically is exactly what our patent describes. You have to have, as prior art, you have to have an additional component that you include with it to take up the space. Maybe that's known, but that's what the invention was trying to avoid. It's the cost of materials. It's a lot cheaper to have one component on the shelf in inventory than two to serve the exact same purpose. I was just going to ask you, you do have a pad though, so you do have this additional component on your invention. I thought you were saying that your invention is better than the secondary references, because the secondary references talk about the need for some additional component in order to make the contact, but that's in fact how your invention works with the use of the pad. Not at all, Your Honor. Hence the cleverness of the invention. It is a molded ... The metal underneath is constructed such that it simply has two different levels of ... They cut fins and grooves, and when they cut it, they're at two different heights. I should just think of it as sort of like an integrated step on the top surface of the dissipator? I shouldn't think of it as some separate off-the-shelf component that I just pop on top of the surface? It is not a separate component. It is the heat dissipator itself. Once the retaining device ... But the claim says pads, so that's what I'm trying to figure out. Oh, I'm sorry. One claim says pads. The other claim says recesses. It was the notion being they were trying to capture the idea of ... Right. No, I understand. ... there are two surfaces, one higher than the other. Both claims were asserted, obviously. There's nothing to teach recesses. I don't understand your secondary consideration argument. You indicate in your brief that you think the district court erred in rejecting the proper evidence of secondary consideration, but what I don't see is a manner in which you've argued to us that they erred in concluding the evidence you submitted was inadmissible for lacking foundation. He seemed to ... The district court judge seems to say two things, inadmissible because it lacks foundation, and even if there was foundation, I don't see how this would establish commercial success. I understand your brief is challenging the second of those two findings, but the first one would preclude the testimony. Am I misunderstanding the record, do you think? No. Well, one of us is. It was not my understanding. I have no clear recollection of that component. That may have been an error on our part, but ... Well, you're into your rebuttal time, then. Let me let you save the rest. Okay. Let's hear from opposing counsel. Ms. Boyd? Good morning, Your Honors, and may it please the Court. I think it's useful to talk for just a moment about really how simple this patent is. It is about a clip that you clip a heat dissipator onto a CPU or other kind of electrical device, and you can rotate it so that if it's two different thicknesses, you could use the same clip with two things. So when I read that, I was like, what are they talking about? It occurred to me it's just like a sink drainer. When you have a plug in your sink, and if you put it at one rotation, it functions as a drainer, and you rotate it 90 degrees, and then it pops down, and now it plugs the sink instead. So we're really talking about a very simple mechanical device here. The problem is the prior art doesn't teach that notion, this interesting insight about rotating the retaining device 90 degrees so that you can compensate for heat difference or the height differentials of the CPU assembly. The problem is known, and that's in the Lowe and the Lynn patents, which were in front of the Patent Office, that you could have, that wanting to have different heights and being able to adjust for different heights, that was a known problem in the art. Lowe and Lynn both had different solutions to that problem. But nobody teaches this solution. That's my concern. The Smithers, so that's why it's an obviousness combination, Smithers plus Marwah. So Smithers shows a square heat sink with a square clip. It's not just the figure that discloses that you could rotate the clip and it would still work 90 degrees. On column two of Smithers at lines 29 through 32, I believe, it talks about the grooves in between the heat dissipator fins, and it talks about grooves being 13 and 14, which are the figure numbers, and 13 and 14 are perpendicular to each other. So it talks about the grooves being perpendicular to each other, which suggests then that the clip on top would fit in either orientation. Does Dr. Karmann talk about that? He does. That's in his declaration in Exhibit D, which is the claim chart. That's at A605. I'm sorry, I may have given you the wrong number there. I'm sorry, 605 and 606. So both the text and the picture suggest that you can rotate it, and then Marwah has adjustments using pads to adjust for the height. So what in Smithers has resilient legs having a bed? So according to Dr. Karmann, if we look at the figure in the Smithers patent at figure 1, the top clip there are these curved bars, and it's those curved bars. So the 4-state 4 patent, the patent in suit here, the way it, the clip touches and clips in the heat sink is there's a right angle, and so this is, there's a right angle like this, and the heat dissipator is here. The way that Smithers works is it's like this instead, so it's a curved bar, 33 and 34 actually make contact with the heat dissipator surface? Those clip down, and that is the... Where does Smithers say that we dissipate the heat by having the lowest portion of curved beams, 33, 34, touch the top surface of the heat dissipator? The part of the clip that includes the curved beams 33 and 34 isn't part of the heat dissipator. The heat dissipator is the thinned apparatus that is clipped down, so the heat is dissipated by the clip holding the dissipator against the chip, and the clip holds the dissipator against the chip using the curved bars as well as the corner bars. Which one is the, you're referring to something called a dissipator. Which one is the dissipator Dissipator is 12. Element 12? Element 12 are the individual fins, and element 10 is the heat dissipator. But I'm saying on your retaining device, your corresponding retaining device in Smithers, what is making contact with the top surface? With the top surface of the heat dissipator 33 and 34, and then clipping the heat dissipator to the chip underneath are the corner pieces that are 35, 36, 37, and 38 are the corner clips. So, what, what should I consider to be the bent? If I think of bent as a noun, right, where I believe the, it was construed to be something that is pointing in a separate direction from the rest of the resilient leg. So, the resilient leg is the entirety of 33 and 34. Those are the two resilient legs. The generally different direction, which is the definition of bent, is the fact that they curve down, they don't go straight across. So, the plane of straight across, it is, it goes in a generally different direction by going down from that plane. And what portion of the Smithers spec tells me that the lowest portion of 33 and 34 are serving like the actual bent and the patented figure that are actually hitting and making contact with the top surface? Is there something in Smithers that definitively says that? At the top of column three, it says the transverse bars 33, 34 are nested channel, nested in channels 14. And the channel goes all the way to the base where the fins connect to the base of the heat dissipator. So, getting back to the rotation concept, what is it that suggests doing that in the prior art? Where you can have two levels on the top surface and then if you rotate it in order to compensate for an overall differential in height in the assembly, you'll still make contact. According to the testimony, excuse me, the declaration of Dr. Carman, to a person of ordinary skill in the art, knowing the issue with wanting to compensate for height differential, knowing about Smithers, which clearly shows something where rotation is possible because it's a square clip over a square and symmetrical dissipator with perpendicular grooves, and knowing the prior art Marwa, which says specifically use pads to compensate for different heights, that a person of ordinary skill in the art would have been motivated to use the pads from Marwa and otherwise use Smithers to have a clip that you can rotate to have two different height accommodations. I guess for me the problem is, this was summary judgment, and what I hear you arguing now is that one of skill in the art would have known that this could be done, but that none of the prior art references actually effectively disclosed it, and the problem is I don't read Dr. Carman's declaration, which I have in front of me, is actually saying that, so point me to where it does, and secondly, I don't read that as what the district court concluded. The district court seems to have concluded that in his view, Carman is right, Smithers discloses everything except arguably a couple of things, but he never disclosed touches on rotation, which leads me, since he said Smithers discloses everything, but it leads me to interpret his opinion as concluding that Smithers discloses rotation, not that one of skill in the art would know you could or would or be motivated to effectuate rotation. That's my problem. It might just be a procedural problem. It might be you can well go back and have him do it right and win it, but I don't understand. I understand his opinion is saying Smithers discloses everything, but these things. So the rotation, the Carman declaration, and I would need to take a moment to find the to his 29, that's my guess, about Smithers and the area in which he says something relevant to, his Smithers declaration, I think, is only one page, right? I believe that's right, a little more than one page, yes. So Dr. Carman's declaration is that Smithers discloses the ability to rotate. Without the pads of Marois, there's no reason for Smithers to have said on its face, you can rotate this, because there isn't any, until you add the two references together, which Dr. Carman has explained in his declaration because of the problem that's known in the art and that there were other solutions to, you would know to add the pads of Marois to the disclosure of Smithers so that you could do this rotation. Is it paragraph 29 that you believe, what is the paragraph in the particular language where you believe? It is paragraph 29, that Smithers doesn't expressly refer to a second orientation, but that it would, his interpretation of the figures is that you could rotate it. Now, this actually may take us, because Judge Murray, you mentioned sort of procedurally, this takes us, I think, to the evidentiary issues in this matter, which is that there is an expert declaration in support of the summary judgment motion. This expert was not proposed, either in fact or an expert discovery. There's no expert that the plaintiff, the patentee, has put forward, controverting any of these conclusions. There simply isn't any factual evidence on the other side of the ledger. This is prior art evidence? The prior art is absolutely evidence, Your Honor. I guess it's your burden, though, right? It is. And if your burden is here and you don't quite get there, then there's no real need for a rebuttal case. That's correct, Your Honor, as far as what the burdens are and what the burden, especially on summary judgment is. That summary judgment can be granted on obviousness, is well-known and well-understood, and that's not in dispute. Typically, summary judgment of obviousness is granted where you have one expert on one side opining that things are obvious and another expert on the other side opining that things are not obvious. If in that situation, you nevertheless can properly grant summary judgment, it seems procedurally troublesome to say, well, if you have evidence and an expert on one side and nothing on the other, then you can't grant summary judgment. That gives perverse incentives in the opposition of summary judgment. I don't think it's the case that you can't grant summary judgment. I think part of the problem is that this opinion, for me, doesn't do any sort of analysis of the elements, all of the elements that they complained in their responsive briefing were absent from these prior art references. That's what's bothering me. In particular, what's bothering me is the rotation. It may be that one of skill in the art would look at Smithers and know from the drawings it's possible it could be rotated, but that's different from concluding it discloses on a face rotation. What I don't see this district court doing is saying, I agree with Dr. Carman that Smithers doesn't disclose rotation, but his analysis of what one of skill in the art would know or could have done or be motivated to do is acceptable. What he actually says is, Carman concludes Smithers discloses every element except pads, and then he goes through and talks only about pads. I think even you and I, as we're standing here, are in agreement that Dr. Carman didn't say Smithers discloses everything except pads because Dr. Carman in 29 acknowledged that Smithers doesn't, in fact, disclose rotation. One of skill in the art would look at these figures and know it can be rotated and then would act accordingly. I guess what I'm wondering is, does this opinion suggest to me that this district court judge either didn't clearly understand Carman's declaration, didn't clearly understand his burden, and maybe that that's a reason he needs to go back and do it properly since it is summary judgment. This court reviews decisions, not opinions, and so I think it is possible, if that is a small gap in the analysis and the opinion of the district court, it is still appropriate for this court to affirm summary judgment on the basis of— But there's more than just a gap that Judge Moore mentioned. There's no articulation in the opinion as, for example, level of ordinary skill in the art that's required. There's no comparison of the scope of the claims of the Assertive Patent and the Accused Patent. There appears to me to be needed analysis and fact-finding in the decision in order for us to appropriately review that decision. Your Honor, I see my time is up. May I respond? Thank you. The district court decision does articulate the full standard for obviousness. The level of ordinary skill in the art was not disputed. There were very few disputes. The disputes were around the rotation element and the bent element, so that is what the decision focuses on because the other elements of the analysis were not disputed. Thank you, Ms. Coy. Thank you, Your Honor. Mr. Whittaker, do you have a few minutes of rebuttal time? Two points. We had not quite discussed resilient legs. I hadn't gotten to that, but the court brought it up and exactly the point that I was going to make is that the stipulated construction requires a resilient leg and then a bent. The bent by stipulation was construed as material that extends in a generally different direction from the resilient leg. Conceptually, that renders the possibility that the resilient leg is itself the bent impossible. It can't both be something and also extend from itself without continuing to be it. So the resilient leg is having a bent. The bent is simply absent from the teachings of Smithers. It's just not there. The reason that's important is because that bent extends from the leg and is that bent that engages the top of the heat dissipator and depending on where that lands on each of the two different levels, the heat sink will accommodate different heights. The reason that is critical, again, the gist of the invention is if it's rotated 90 degrees, the bent will engage a different level on the heat dissipator. Right, but do you agree that in Smithers it's possible as a factual matter to spin his retaining device 90 degrees and that the very bottom portion section of those curved beams will also, again, still make contact with the top surface of the Smithers heat dissipator? I cannot, Your Honor. And again, it's because all of those conclusions are based on the drawings. There's nothing to suggest. Well, there's Dr. Carman. Dr. Carman says so, but his opinion, I believe, lacks the clarity that's necessary. He says that one can rotate it, but if you'll notice, the resilient legs, the bent portion thereof, those must still be able to go in one set of grooves, rotate it, go into a different set of grooves. Well, he says that in his expert opinion, looking at these figures, that in the second orientation, the symmetry of the structure, the location of channel 13 in the description, is that in a second orientation, the resilient leg 33 would fall into the gap between the fins that Smithers called channel 13. Agreed, Your Honor. He says that can be based on nothing except the accuracy of those patent drawings, which we believe cannot be relied upon for that level of accuracy, because... No, but everything is from the vantage point of how one of skill in the art would interpret a patent. And he is looking at Smithers, and as an expert, he is rendering his impression of what he would take away from Smithers by virtue of his analysis of those drawings. Fair enough, Your Honor. But the district court is clearly wrong when the district court said, Dr. Carman said Smithers discloses everything but pads. He clearly, in this paragraph, doesn't say Smithers discloses rotation. What he says is, based on his review of Smithers, one of skill in the art would look at this and know Smithers could be easily rotated, and that's what he says. Assuming that's accurate, one still does not reach the invention. Assuming for the sake of argument that Smithers can be rotated, even combining that with the pads of Marois, what you still have is a device which can be attached in one orientation. Assume it can be rotated, it's rotated and attached in an opposite orientation. It's still at the same height. No height adjustment has changed. Add the pads of Marois, and you have the same thing. You have a heat sink that can be adjusted for a different thickness because you've added this symmetric pad from Marois, and then rotating the retaining device still accomplishes nothing. It's still at the same height. And again, I keep coming back to the gist of the invention. The clever aspect is that simple action of rotating, even if it can be gleaned from the Smithers reference, there's nothing that suggests, oh, if I rotate it, I can land on a different level of this heat dissipator and adjust for the thickness. Or if I rotate it the other way, I can land on the other level. And therefore, the cleverness of the invention is the realization that that very simple movement can have a very substantial and unpredictable result. That would be our position. Thank you both counsel. The case is taken under submission.